

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

November 22, 1957

Honorable John C. White
Commissioner, Texas
  Department of Agriculture
Austin, Texas

Opinion No. WW-303

Re: Interpretation of the
Cooperative Marketing
Act, Chapter 8, Articles
5737 through 5764, Texas
Civil Statutes, relating
to non-farmers living in
a rural agrarian communi-
ty being charter members
of cooperative associa-
tions under the above
chapter with equal rights
and privileges as the
farming members of the
association, and other
questions.

Dear Commissioner White:

You have requested an interpretation from this Depart-
ment on the Cooperative Marketing Act, Chapter 8, Articles 5737-
5764, Texas Civil Statutes (Vernon, 1948), as such Act relates
to the following questions:

"1. Can non-farmers living in a rural
agrarian community, such as the bank, grocery
store and blacksmith shop, be charter members
of cooperative associations under this Chapter
with equal rights and privileges as the farming
members of the association?

"2. Is the supplying of water to the
members of an association organized for this pur-
pose covered by this Chapter, and is this type of
association allowable under this Chapter?

"3. Does a cooperative type association
or corporation, organized under Chapter 3, Articles
5578 through 5611, or under Chapter 8, Articles
5737 through 5764, Vernon's Statutes, have the power
to execute oil and gas leases covering lands owned
by it in fee?"

Regarding your first question, the Cooperative Marketing Act, Article 5743, Tex.Civ.Stat. (Vernon, 1948), provides:

"(a) Under the terms and conditions prescribed in its by-laws, an association may admit as members, or issue common stock, only to persons engaged in the production of the agricultural products to be handled by or through the association, including the lessees and tenants of land used for the production of such products and any lessors and landlords who receive as rent part of the crop raised on the leased premises.
(b) If a member of a non-stock association be other than a natural person, such member may be presented by any individual, associate officer or member thereof, duly authorized in writing. (c) Any association as defined in Article 5738(c) may become a member or stockholder of any other association or associations organized hereunder."

It is obvious that under the above quoted statute non-farmers living in a rural agrarian community, e. g., the bank, grocery store or blacksmith shop, are not eligible for membership in any cooperative association organized under this Act, unless such non-farmer is: (a) engaged in the production of agricultural products to be handled by or through the association, including lessees and tenants of land used for producing such products; or is (b) a lessor or landlord who receives as rent a part of the crop raised on the leased premises; or is (c) a corporation organized under this Act or an association organized under the Cooperative Marketing Acts of any other state of the United States, provided such foreign association is composed of persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, or nut or fruit growers. See Tex.Civ.Stat. (Vernon, 1948), Art. 5738. Whether or not any non-farmer living in a rural agrarian community would be eligible for membership of an association organized under this Act on the basis of the above stated qualifications is a question of fact, which must be determined in each particular case.

Your second question relates to the organization of an association under this Chapter, the purpose of which is to supply water to the members of such association. Art. 5740, Tex. Civ. Stat. (Vernon, 1948), as amended, provides:

"An Association may be organized to engage in any activity in connection with the production, cultivation and care of citrus groves or the marketing or selling of agricultural products and citrus fruits produced by and marketed for its members, or in the harvesting, preserving, drying, processing, canning, storing, handling, shipping or utilization thereof, or the manufacturing, or marketing of the by-products thereof; or in connection with the manufacturing, selling or supplying to its members of machinery, equipment or supplies; or in the financing of the above enumerated activities; or in any one or more of the activities specified herein. Provided, however, any such activities may extend to non-members and to the production, cultivation and care of lands owned or cultivated by them and their products limited by Article 5738 as heretofore amended." (Emphasis added).

Article 5742, Tex. Civ. Stat. (Vernon, 1948), as amended, provides in part as follows:

"(a) To engage in any activity in connection with the production, cultivation and care of citrus groves and the marketing, selling, harvesting, preserving, drying, processing, canning, packing, storing, handling or utilization of any agricultural products produced or delivered to it by its members, or the production, manufacturing or marketing of the by-products thereof; . . ."

Article 5742 (g), Tex. Civ. Stat. (Vernon, 1948), provides in part:

"(g) To do each and everything necessary, suitable or proper for the accomplishment of any one of the purposes or the attainment of any one or more of the objects herein enumerated; or conducive to or expedient for the interest or benefit of the association; . . ."

The principal rule that has been formulated for the interpretation of charter powers is that only such powers are given as are clearly embraced in the words of the Act or charter, or derived therefrom by necessary implication in view of

the objects of the grant. Attorney General's Opinion O-6045 (1944). In every grant of corporate powers there is implied a power to do whatever is necessary, reasonable, or appropriate to the exercise of the authority expressly conferred.

We are of the opinion that the organization of the association to supply water to its members is an activity which is "necessary, suitable and proper" to the "production, cultivation and care of citrus groves", provided such association is organized to supply water to its members for use in producing and cultivating the citrus trees. If, however, the water is to be supplied to the members of the association for some use other than the production, cultivation or care of the citrus trees, such association could not be properly formed and be consistent with the purposes of any association under this Act. We can perceive of no instance in which the water could be used in the production, cultivation and care of citrus groves except for the irrigation of the trees.

We are of the further opinion that the language in Article 5740, which provides for the organization of an association to engage in any activity in connection with the "marketing or selling of agricultural products and citrus fruits produced by and marketed by its members" will not allow an association to be organized for the purpose of supplying water to its members who are engaged in producing all agricultural products other than citrus groves. Since an association may not be formed for any activity which is not in connection with the marketing or selling of the products, we do not believe that an association to supply water for the production or cultivation of the products bears any reasonable relation to the activity allowed by the statute, i.e., marketing or selling of the products.

Regarding your third question, Article 5742 (f), Tex. Civ.Stat. (Vernon, 1948), empowers any association incorporated under the Cooperative Marketing Act:

"(f) To buy, hold and exercise all privileges of ownership over such real or personal property as may be necessary or convenient for the conducting and operation of any of the business of the association or incidental thereto."

We are of the opinion that the power to own real property with "all privileges of ownership" necessarily implies a power to do any act which is consistent with the usual incidents and privileges of ownership. This includes the power to execute oil and gas leases covering lands which such association owns in fee.

As to associations organized under the Marketing and Warehouse Corporations Act, Chapter 3, Articles 5578 through 5611, Tex. Civ. Stat. (Vernon, 1948), Article 5579, in stating the powers of such associations, provides in part:

> ". . . They may erect, purchase or lease, and operate warehouses, building, elevators, gins, storage tanks, silos, and such other places of storage and security as may be necessary for the storage, grading, weighing and classification of cotton, and all farm products, and for the purpose of preparing such products for the market." (Emphasis added).

The power to purchase such facilities is, of course, the power to own them; likewise, the power to own the enumerated facilities of storage must necessarily imply the power to own the land upon which they are located. It is evident, therefore, that the power in such association to own land in fee carries with it the authority to use the land to its best advantage, exercising all the normal privileges of ownership, including the power to execute oil and gas leases covering such lands. Of course, this is subject to the limitations placed upon corporate ownership of land under the general corporation laws of the State of Texas.

## S U M M A R Y

Non-farmers living in a rural agrarian community may not be members of an association organized under the Cooperative Marketing Act, Chapter 8, Articles 5737, through 5764, Tex. Civ. Stat. (Vernon, 1948), unless such non-farmer qualifies for membership under the provisions of Article 5743, Tex. Civ. Stat. (Vernon, 1948) and such qualification is always a question of fact. An association may be organized under this Act to supply water to its members only for the production and cultivation of citrus groves; however, no such association may be organized to supply water to those engaged in the production of other agricultural products. A cooperative association

organized under the Markets and Warehouse Corporation Act, Chapter 3, Articles 5578 through 5611, Tex. Civ. Stat. (Vernon, 1948), or under the Cooperative Marketing Act, Chapter 8, Articles 5737 through 5764, Tex. Civ. Stat. (Vernon, 1948), has the power to execute oil and gas leases covering lands which such association owns in fee, subject to the limitations placed upon corporate ownership of land under the general corporation laws of the State of Texas.

Yours very truly,

WILL WILSON
Attorney General of Texas

By B. H. Timmins, Jr.

BHT:pf:zt

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

L. P. Lollar
Arthur Sandlin
Richard Stone

REVIEWED FOR THE ATTORNEY GENERAL
BY:   James N. Ludlum